IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACKELYN MARIE MANSON :

v. : Civil Action No. DKC 26-1856

PNC BANK, NATIONAL ASSOCIATION, et al. :

**MEMORANDUM OPINION**

Many motions have been filed in this case relating to a foreclosure, including motions for a temporary restraining order and a preliminary injunction filed by Plaintiff Jackelyn Marie Manson (“Plaintiff”). (ECF Nos. 41; 43). An opposition was filed by several Defendants, (ECF No. 47); Ms. Manson replied, (ECF No. 50). No hearing is deemed necessary, Local Rule 105.6. For the following reasons, the motions will be denied.

## I. Background[1]

On May 11, 2026, Ms. Manson, who is proceeding *pro se*, commenced this action related to a July 11, 2023, foreclosure sale

---

[1] The following facts are drawn from Ms. Manson’s complaint and subsequent filings and material submitted or referred to by Defendants. Some of the facts recited in this section are based on state court dockets and materials of which the court takes proper judicial notice. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (“[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.”)

of the property known as 7901 Keech Road, Charlotte Hall, Maryland 20622 (“Property”). (ECF No. 1 ¶ 21; 43, at 3). In July 2006, Ms. Manson executed a promissory note in the original principal amount of $220,000 secured by a Deed of Trust on the Property. (ECF No. 43, at 3). Just over three years later, a judgment was entered on December 2, 2009, against Ms. Manson in the amount of $259,351.37. (*See* ECF No. 47, at 2). Subsequently, the judgment was re-entered in August 2011 for $262,521.48. Ms. Manson asserts that collection efforts were made but that the enforcement period expired in 2022. (ECF No. 43, at 7). Nevertheless, foreclosure proceedings commenced in April 2022, a sale occurred July 11, 2023, and the foreclosure sale was ratified on August 28, 2025. (ECF No. 47). Now, Ms. Manson has received notice that a possession proceeding is set for September 3, 2026. She seeks an order barring the Circuit Court for Charles County from conducting that hearing and barring Defendants from taking any enforcement action concerning the Property. (ECF No. 41, at 3). Overall, since 2009, about nearly a dozen actions related to the Property have taken place or are pending in five courts—including this one.

**A. The Complaint Before this Court**

Ms. Manson’s complaint contains four counts styled as causes of action: “declaratory relief,” (ECF No. 1 ¶¶ 26–28 (count I));

---

(quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

"quiet title," (*id.* ¶¶ 29–32 (count II)); "FDCPA," presumably for violations of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692(e), (*id.* ¶¶ 33–36 (count III)); and "injunctive relief," (*id.* ¶¶ 37–39 (count IV)). She contends that once the money judgment expired, there could be no enforcement of the deed of trust. (*Id.* ¶ 2). Ms. Manson seeks a declaration that "the enrolled money judgment superseded enforcement remedies of its underlying note and deed of trust," that any "subsequent assignments conveyed no enforceable foreclosure authority," that "the Trustee's Deed is void," and that "Defendants lacked lawful authority to foreclose and pursue possession." (*Id.* ¶ 28).

**B. Procedural History of the Final Judgment Ratifying Foreclosure Sale**

By the time Ms. Manson filed her complaint here, the Circuit Court for Charles County had already entered its August 2025 final judgment ratifying the foreclosure sale at the heart of Ms. Manson's allegations. Before the foreclosure sale was ratified, Ms. Manson filed related appeals in September 2023 and October 2024; soon after the final judgement of the Circuit Court ratifying the sale was entered, Ms. Manson appealed to the Appellate Court of Maryland in September 2025. (*See* ECF No. 1-12, at 12; 1-13, at 2). This summer, on July 6, 2026, the Appellate Court affirmed the final judgment of the Circuit Court ratifying the foreclosure sale. The Appellate Court considered Ms. Manson's arguments that

the Circuit Court "erred in not dismissing the foreclosure action because: (1) the underlying promissory note had been previously reduced to a final money judgment, and (2) that money judgment had expired as it was not renewed or enforced within the twelve-year statute of limitations." The next day, Ms. Manson appealed the Appellate Court's decision to the Supreme Court of Maryland.

### C. A Defendant's Wrongful Detainer Action and Motion for Judgment Awarding Possession

In February this year, while Ms. Manson's appeal of the final judgment of the Circuit Court ratifying the foreclosure sale was pending, one of the defendants in this action, Laurel Kings Holdings, LLC, ("Laurel Kings"), filed a complaint for wrongful detainer in the District Court of Maryland. (*See* ECF No. 1-10, at 2). Laurel Kings moved for a judgment awarding possession of the Property in March 2026. (*See* ECF No. 1-9, at 1–4).

### D. Ms. Manson's Efforts to Quiet Title

Ten days or so before Ms. Manson filed her complaint in this court, Ms. Manson filed a complaint to quiet title and for declaratory relief in the Circuit Court for Charles County on May 1, 2026. (*See* ECF No. 47, at 3). The Circuit Court dismissed Ms. Manson's action at the end of July; Ms. Manson appealed the dismissal to the Appellate Court of Maryland. On August 5, 2026, the Appellate Court of Maryland entered an order to proceed.

**E. Recent Developments Related to Ms. Manson's Motions for Preliminary Relief**

On August 17, 2026, a few days before Ms. Manson filed her motions for preliminary relief, Ms. Manson filed a motion in the Circuit Court for Charles County also seeking a stay of the September 3, 2026, possession hearing and for relief due to alleged lack of subject matter and personal jurisdiction. Earlier this week, on August 26, 2026, the Circuit Court noted on the docket for that filing that: "Address at hearing on [September 3], 2026." Mot. to Stay with Judge's Notation, *Taylor v. Manson*, No. C-08-CV-22-000234 (Md.Cir.Ct. Aug. 26, 2026).

The day before Ms. Manson filed her motion for a temporary restraining order (August 19, 2026), Ms. Manson filed an alleged counterclaim "in the 7th Circuit" challenging the validity of the enforcement actions. (*See* ECF No. 41-1, at 3). In this filing, Ms. Manson seeks, among other things, declaratory relief, "CLEC treble forfeiture," and to quiet title, and alleges wrongful foreclosure, "conversion of proceeds," and "fraud on the court." (*See id.*). In her motion for a temporary restraining order, Ms. Manson states that CLEC-related "contentions" are "now both before this Court and the Supreme Court of Maryland." (ECF No. 41, at 3; *see id.*, at 2–3).

Since Ms. Manson filed her motions for preliminary injunctive relief, on August 24, 2026, the Supreme Court of Maryland denied

without prejudice a request for similar relief to stay the upcoming possession hearing. After the Supreme Court of Maryland entered its order, Ms. Manson filed in this court a request for expedited consideration of her motions for preliminary relief, (ECF No. 46). The following day, on August 25, 2026, a handful of Defendants—Laurel Kings; McMichael Taylor Gray, LLC; and Trinity Financial Services, LLC—filed an opposition to Ms. Manson's motions for injunctive relief and request for expedited consideration. (ECF No. 47). In the afternoon, Ms. Manson filed a reply. (ECF No. 50).

## II. Standard of Review

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524–26 (4th Cir. 2003); *see also* [*De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220–21 (1945)]. Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. [*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)]; *see also* [*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)].

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds by* 559 U.S. 1029 (2010) *and reissued in part*, 607 F.3d 355 (4th Cir. 2010).

To be entitled to a temporary restraining order or preliminary injunction, plaintiffs must clearly show that "(1) they are likely to succeed on the merits; (2) they will suffer irreparable harm; (3) the balance of the equities favors their position; and (4) the relief they seek is in the public interest." *Bauer v. Elrich*, 463 F.Supp.3d 606, 610 (D.Md. 2020) (citing *Winter*, 555 U.S. at 20); *see also N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 492 (4th Cir. 2025). Each of these requirements must be fulfilled. *See Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019). In other words, failure to satisfy any one of the four factors is dispositive and motions for preliminary injunctive relief should be denied. Also, a self-represented plaintiff's allegations are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

**III. Analysis**

The first factor—likelihood of success on the merits—is dispositive of Ms. Manson's motions. Defendants, save one, have moved to dismiss or for judgment on the pleadings as to all of Ms. Manson's claims. (*See* ECF Nos. 8; 10; 17). Many of the arguments are based on the already completed and pending actions in state court, and rely on lack of subject matter jurisdiction, res judicata, and more. While those motions will be resolved in due

course, they certainly inform consideration of the likelihood of success prong.

Ms. Manson argues that

> Because Plaintiff's injury arises from Defendants' independent collection conduct, and not from any state-court judgment, this action falls outside the *Rooker-Feldman* doctrine. Because the relief runs against the parties and not the state proceeding, it does not offend the Anti-Injunction Act. And because the state forum did not afford Plaintiff an adequate opportunity to litigate the federal and statutory questions presented — as the certified transcript of August 17, 2023 demonstrates — abstention is not warranted.

(ECF No. 43, at 3). However, each of the doctrines Ms. Manson references cut against Ms. Manson's showing of likelihood of success on the merits.

**A. Count I (Declaratory Relief)**

Count I seeks declarations as noted above regarding the interaction of the promissory note judgment with the deed of trust enforcement actions. Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy[2] within its

[2] The actual controversy here, if there is one, may be found in Ms. Manson's FDCPA claim. As noted *infra* p. 10, however, Ms. Manson has failed to specify which independent claim upon which her request for a declaratory judgment rests. In claim I of her complaint, which seeks declaratory relief, Ms. Manson alleges that "[a]n actual controversy exists regarding ownership, enforceability, title, foreclosure authority, and the validity of the Trustee's Deed." (ECF No. 1 ¶ 27). The court notes, however, that merely stating that an "actual controversy exists" does not

jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought." 28 U.S.C. § 2201(a) (emphasis added); *see also* Fed.R.Civ.P. 57 (governing the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201).

> [A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three elements are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

---

make it so. In her motion for a preliminary injunction, Ms. Manson further asserts, in reference to her FDCPA claim, that

> [t]he recording of Trustee's Deed LEY 13835 on September 4, 2025, and Defendants' ongoing effort to obtain a writ of possession in 2026, are each discrete collection acts within one year of the commencement of this action. They are independently timely regardless of the date the foreclosure was first initiated.

(ECF No. 43 at 7). Defendants Laurel Kings, McMichael Taylor Gray, LLC, and Trinity Financial Services, LLC argue that Ms. Manson "has not alleged any conduct by Laurel Kings, Trinity[,] or MTG in violation of the FDCPA or within its Statute of Limitations." (ECF No. 47).

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201) (other citations omitted).

A declaratory judgment is a form of relief and not an independent cause of action. This means that, in order to state a viable request for declaratory relief, a plaintiff must assert a valid underlying cause of action within the court's subject matter jurisdiction, such as a violation of a federal statute, or breach of contract in a diversity action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). At the threshold, then, Ms. Manson's failure to identify a cause of action dooms count I.

Moreover, the United States Court of Appeals for the Fourth Circuit has explained that "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)). If a party is entitled to a declaratory judgment, the court must issue one, regardless of which side prevails and even if it is adverse to the party requesting it. *See Future Field Sols., LLC v. Van Norstrand*, No. 23-cv-1301-DKC, 2026 WL 183522,

at *10 (D.Md. Jan. 23, 2026); *Md. Physician's Edge, LLC v. Behram*, No. 17-cv-2756-DKC, 2019 WL 4573417, at *9 (D.Md. Sep. 20, 2019).

To succeed on preliminary relief, however, Ms. Manson needs to demonstrate not only that a declaration would be appropriate, but also that it would be in her favor. The court is not sufficiently assured that it would not "abuse its discretion" by exercising jurisdiction over Ms. Manson's declaratory judgment claim for the following four reasons. *See Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 592 (citations omitted).

First, this court is prohibited from granting "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 22 U.S.C. § 2283. Known as the Anti-Injunction Act, 28 U.S.C. § 2283 deprives courts of jurisdiction in the declaratory judgment context when such relief would have the same effect as an injunction that is barred by its strictures. *See Denny's, Inc. v. Cake*, 364 F.3d 521, 528 n.8 (4th Cir. 2004) (quoting *Texas Emps.' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir.1988) (en banc)); *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp. 3d 635, 641 (D.Md. 2015).

Styling a request for injunctive relief as a restraint on a party rather than a state court is impermissible; the Act cannot be so "evaded." *Denny's, Inc.*, 364 F.3d at 528 n.8 (quoting *Atl.*

*Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)). Ms. Manson cannot avoid the effect of the Anti-Injunction Act by framing her motions for preliminary relief as "run[ning] against Defendants' enforcement conduct, not against the state proceeding." (ECF No. 43, at 6).

Second, the constellation of final judgments and pending litigation in other forums, (*see supra*, Section I at 2–6), raise serious preclusion concerns that the court will more fulsomely examine in a separate opinion.

Third, the *Younger* abstention doctrine, 401 U.S. 37 (1971), "requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists," if there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 165 (4th Cir. 2008); *see also Graves v. One W. Bank, FSB*, 13-cv-3343-DKC, 2014 WL 994366, at *2 (D.Md. Mar. 13, 2014). *"'Younger* is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action.'" *Williams v. Lubin*, 516 F.Supp.2d 535, 539 (D.Md. 2007) (quoting *Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir.2006)). Along the lines of this court's prior

reasoning in *Graves*, the first two prongs of *Younger* appear to be satisfied here given the pending appeal before the Supreme Court of Maryland and the state's substantial interest in its property law. *See Graves*, 2014 WL 994366, at *2; *see also Harper v. Pub. Serv. Comm'n of W.Va.*, 396 F.3d 348, 352 (4th Cir. 2005) ("[P]roperty law concerns, such as land use and zoning questions, are frequently 'important' state interests justifying *Younger* abstention."). As for the third and final prong, while Ms. Manson asserts that "the state forum did not afford Plaintiff an adequate opportunity to litigate," (ECF No. 43, at 3), review of her provided evidence reveals pages on end of argument supplied by Ms. Manson as to allegations that fall under not only claim I, but also claims II, III, and IV. (*See, e.g.,* ECF No. 43-1, at 30:16–31:13 (relating to claim I); 3:14–4:1 (relating to claim II); 25:11–27:5 (relating to claim III); 44:5–13; (relating to claim IV)). *Younger* abstention thus appears to prohibit this court from entertaining Ms. Manson's first claim—and her remaining alleged causes of action, too.

Fourth, even if these possible preclusion and abstention issues do not cast fatal doubt on Ms. Manson's likelihood of success on the merits, Ms. Manson's apparent direct challenges to the propriety of the final judgment of the Circuit Court for Charles County ratifying the foreclosure sale in count I are beyond the jurisdiction of this court. This avenue for relief styled as

a cause of action may implicate the *Rooker-Feldman* doctrine—a likely jurisdictional bar to Ms. Manson's claim.

The *Rooker-Feldman* doctrine "reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals." *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 202 (4th Cir. 1997); *see also* 28 U.S.C. § 1257(a) (governing the exclusive jurisdiction of the Supreme Court of the United States over appeals from state-court judgments). The doctrine is "narrowly confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. ----, 2026 WL 1751823, at *1753–54 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Prior to the ruling of the Court in *T. M.* this June, the *Rooker-Feldman* doctrine might not have applied to Ms. Manson's situation because the key state court proceeding was ongoing. *See Young v. Ditech Fin., LLC*, No. 16-cv-3986-PX, 2017 WL 3066198, at *3 (D.Md. July 19, 2017) (citing *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 321 (4th Cir. 2016)). In *T.M.*, the Court instructed that "allowing federal district courts

to review state-court judgments while they are on appeal in the state-court system would undermine the '[c]ooperation and comity' on which our federal system is built." *T. M.*, 608 U.S. ----, 2026 WL 1751823, at *1751 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999)). The *Rooker-Feldman* doctrine thus applies to Ms. Manson's federal complaint filed as she awaited state appellate review of the foreclosure sale.

Moreover, "[c]ourts have consistently applied the *Rooker–Feldman* doctrine to dismiss claims requesting federal district court review of a state court's eviction and foreclosure proceedings." *Rodman v. Jean-Charles*, No. 18-cv-3757-DKC, 2020 WL 1248946, at *4 (D.Md. Mar. 16, 2020) (quoting *Nott v. Bunson*, No. 09-cv-2613-WMN, 2009 WL 3271285, at *2 (D.Md. Oct. 9, 2009)).

The doctrine further restrains "'lower courts from considering not only issues raised and decided in the state courts, but also issues that are "inextricably intertwined" with the issues that were before the state court.'" *McNeil v. Maryland*, 11-cv-2495-DKC, 2012 WL 3643899, at *3 (D.Md. Aug. 22, 2012), *aff'd*, 505 F.App'x 279 (4th Cir. 2013) (quoting *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (citation omitted)). Accordingly, the key question here is whether Ms. Manson, as a federal plaintiff, seeks to set aside a state court judgment or presents an independent claim. *See Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 202 (4th Cir. 2000). The former appears to be Ms.

Manson's aim. The court cannot—on this record—identify an independent claim; the alleged causes of action and attendant allegations appear enmeshed with the issues that went before the state court and were appealed.

For example, in the first purported count of her complaint, Ms. Manson contends that "[a]n actual controversy exists regarding ownership, enforceability, title, foreclosure authority, and the validity of the Trustee's Deed." (ECF No. 1 ¶ 27). This allegation appears to call into question the Circuit Court's finding to the contrary. Moreover, the relief Ms. Manson pursues—a declaration from this court that "Defendants lacked lawful authority to foreclose and pursue possession," (ECF No. 1 ¶ 28)—would directly undermine the final judgment of the Circuit Court ratifying the foreclosure sale and the enforcement actions that flow from it (including the upcoming September 3, 2026, possession hearing and any writs of possession).

**B. Count II (Quiet Title)**

For similar reasons, Ms. Manson's second claim (for quiet title) also falters and Ms. Manson's showing of likelihood of success on the merits is insufficient. (*See id.* ¶¶ 29–32). In count II, Ms. Manson "alleges Defendants' claimed interests are invalid, defective, expired, or unenforceable." (*Id.* ¶ 31). Ms. Manson goes on to "request[] restoration and confirmation of [her] ownership rights and removal of adverse claims." (*Id.* ¶ 32).

Because, in essence, this claim amounts to seeking to void state court findings, the *Rooker-Feldman* doctrine bars this court's review—and thwarts any likelihood of success on the merits as to count II.

Furthermore, the dismissal by the Circuit Court for Charles County of Ms. Manson's quiet title action—a suit commenced before Ms. Manson's complaint was filed in this court—is currently pending appeal in the Appellate Court of Maryland. (*See* ECF No. 47, at 3). Indeed, in an August 17, 2026, filing to the Circuit Court, Ms. Manson states that the appeal pending before the Appellate Court "is the operative proceeding on the quiet title and validity of assignment questions that are the foundation of any possessory right Trinity or Laurel Kings Holdings LLC might claim." Def.'s Second Suppl. Mot. to Stay Possession Hr'g, Vacate Void Orders, & for Emergency Injunctive Relief for Lack of Subject Matter and Personal Jurisdiction at 10, *Taylor v. Manson*, No. C-08-CV-22-000234 (Md.Cir.Ct. Aug. 17, 2026). The likelihood of success on this claim is slim due to the likely application of *Younger* abstention.

**C. Count III (Violations of the Fair Debt Collection Practices Act)**

Ms. Manson's third claim is for violations of the Fair Debt Collection Practices Act. (*Id.* ¶¶ 33–36 (count III)). Courts have uniformly held that the FDCPA does not supply equitable relief

to an individual. *See Womack v. Freedom Mortg.*, No. 19-cv-3182-GJH, 2019 WL 13401859, at *1 (D.Md. Nov. 13, 2019); *Hardy v. Nagle & Zaller, P.C.*, No. 13-cv-1461-PJM, 2013 WL 6410849, at *1 (D.Md. Dec. 6, 2013); *Parillon v. Fremont Inv. & Loan*, No. 09-cv-3352-BEL, 2010 WL 1328425, at *3 (D.Md. Mar. 25, 2010); *Nott*, 2009 WL 3271285, at *2; *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) (collecting cases); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982) ("[E]quitable relief is not available to an individual under the civil liability section of the [FDCPA]."). Without equitable relief available to Ms. Manson under FDCPA, this claim cannot serve as a foundation from which a temporary restraining order may issue. *See Womack*, 2019 WL 13401859, at *1; *Miller v. Pappas*, No. 13-cv-190, 2013 WL 11319003, at *4 (N.D.W.Va. Sep. 4, 2013), *report and recommendation adopted*, 13-cv-190-IMK, 2016 WL 2903268 (N.D.W.Va. May 18, 2016); *Nott*, 2009 WL 3271285, at *2. Accordingly, Ms. Manson cannot obtain a temporary restraining order pursuant to the FDCPA and it is unnecessary to examine Ms. Manson's showing as to claim III's likelihood of success on the merits.

Just as Ms. Manson's allegations pursuant to the FDCPA cannot support entry of a temporary restraining order, preliminary injunctive relief stemming from claim III would not be proper.

**D. Count IV (Injunctive Relief)**

The remaining claim to examine is Ms. Manson's fourth alleged cause of action. Count IV calls for "injunctive relief," (ECF No.1 ¶¶ 37–39)—but this is a remedy, not a claim.

Overall, Ms. Manson has not shown a likelihood of success on the merits for any of her alleged causes of action that may properly serve as bases for a temporary restraining order or a preliminary injunction. Thus, Ms. Manson's motions fail to satisfy the first requirement. Because each of the four factors need to be clearly shown, when a plaintiff fails to carry her burden as to a single requirement, preliminary injunctive relief cannot issue.

**IV. Conclusion**

For the foregoing reasons, Ms. Manson's motions for a temporary restraining order and a preliminary injunction will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge